UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL JAMES WOYTOWICZ,

                Plaintiff,

v.                                                          5:15-CV-0906
                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINKSY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Daniel James Woytowicz ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted and Defendant's motion is denied.

I.  RELEVANT BACKGROUND

    A.  Factual Background

Plaintiff was born on June 18, 1975. (T. 206.) He received his general education diploma ("GED"). (T. 228.) Generally, Plaintiff's alleged disability consists of anxiety, depression, epilepsy, scoliosis, arthritis, degenerative disc disease, obsessive compulsive disorder ("OCD"), and gastritis. (T. 227.) His alleged disability onset date is November 30, 2005. (T. 111.) His date last insured is March 31, 2011. (T. 112.) He previously worked in customer service. (T. 229.)

    B.  Procedural History

On September 27, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 111.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 5, 2014, Plaintiff appeared before the ALJ, Marie Greener. (T. 61-92.) On May 8, 2014, Plaintiff appeared before ALJ Greener for a supplemental hearing. (T. 43-60.) On May 28, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-42.) On May 29, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-37.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2011, and Plaintiff had not engaged in substantial gainful activity since November 30, 2005. (T. 21.) Second, the ALJ found that Plaintiff had the severe impairments of depression and anxiety. (T. 22.) The ALJ determined that Plaintiff's epilepsy, gastritis, cervicalgia, hyperplasia, high cholesterol, hypertension, scoliosis, arthritis, degenerative spine, fatty liver disease, back pain, knee pain, and chest pain were non-severe impairments. (T. 22-24.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25-28.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but was limited to unskilled work. (T. 28.) Specifically, the ALJ determined that Plaintiff could perform work which did not require more than simple, short interactions with supervisors, co-workers, or the public; he could perform tasks that did not require working in conjunction with others and instead predominantly involved working with objects, rather than people; and he could work in a low-stress environment with routine daily tasks and duties in the same workplace, which did not significantly change on a daily basis and which were not fast-paced and did not require multi-tasking. (T. 28.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 34-37.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was not supported by substantial evidence. (Dkt. No. 13 at 6-13 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues that the ALJ's step five determination was unsupported by substantial evidence. (*Id.* at 13-14.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 14 at 2-11 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ's finding at step five was supported by substantial evidence. (*Id.* at 12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

5

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545, 416.945.  The RFC is based on all the relevant medical and other evidence of record, and takes into consideration the limiting effects of all of Plaintiff's impairments.  *Id.*

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues that the ALJ's mental RFC determination was not supported by substantial evidence because the ALJ failed to afford proper weight to the medical source opinions of Plaintiff's treating physician, Joseph Augustine, M.D., and the ALJ improperly discounted a portion of the opinion from the consultative examiner, Christina Caldwell, Psy.D. (Dkt. No. 13 at 6-13 [Pl.'s Mem. of Law].) Plaintiff does not question the ALJ's physical RFC determination. For the reasons stated herein, and further outlined in Defendant's brief, the ALJ erred in her analysis of the medical opinion evidence in the record.

In making her RFC determination the ALJ relied primarily on the opinion of the non-examining State agency medical consultant, R. Noble, Ph.D., affording the opinion "great weight." (T. 32.) On December 5, 2012, State agency medical consultant, Dr.

7

Noble, reviewed the medical evidence in the record and provided a mental RFC assessment. (T. 106-110.) Dr. Noble's review of the record included the examination and opinion of consultative examiner, Christina Caldwell, Psy.D. (T. 102.) For the reasons stated herein, the ALJ erred in her analysis of the medical opinions provided by Drs. Noble and Caldwell.

Dr. Caldwell performed a psychiatric evaluation on October 29, 2012. (T. 474-478.) She observed Plaintiff was responsive and cooperative; however, his overall manner of relating, social skills, and presentation were poor due to anxiety. (T. 475.) She observed that Plaintiff's eye contact was appropriate. (*Id.*) Dr. Caldwell noted that Plaintiff's speech was "intelligibility stuttering" and his voice was pressured. (T. 476.) She noted his thought processes were coherent and goal directed. (*Id.*) She noted that Plaintiff cried off and on throughout the evaluation. (*Id.*) Plaintiff was orientated, his attention and concentration were mildly impaired, his memory was intact, his insight was fair to poor, and his judgment was fair. (*Id.*)

Dr. Caldwell opined in a medical source statement, that Plaintiff was limited in his ability to follow and understand simple directions and instructions due to his anxiety. (T. 477.) She opined that he was limited in his ability to perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. (T. 477.) Dr. Caldwell further opined that Plaintiff was unable to make appropriate decisions, relate adequately with others, or appropriately deal with stress. (*Id.*)

Dr. Noble ultimately opined that despite his anxiety and depression, Plaintiff retained the capacity to perform simple and some complex work related tasks in a

8

setting that required only limited contact with others. (T. 107.) Dr. Noble specifically opined that Plaintiff was "not significantly limited" in his ability: to carry out short and simple instructions; to carry out detailed instructions; and to make simple work-related decisions. (T. 106.) He opined that Plaintiff was "moderately limited" in his ability: to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to work in coordination with or in proximity to others without being distracted by them. (*Id.*) He stated his opinion was based on Dr. Caldwell's opinion that Plaintiff had a limited ability to maintain attention and concentration and a limited ability to maintain a regular schedule. (T. 107.)

Dr. Noble provided an opinion regarding Plaintiff's ability to socially interact. He stated that Plaintiff was "moderately limited" in his ability to: interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 107.) He opined that Plaintiff was "not significantly limited" in his ability to: ask simple questions or requests assistance; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Noble stated that these opinions were based on mental status examinations which revealed that Plaintiff had a limited ability to relate adequately with others and difficulty being in crowded places. (*Id.*)

Dr. Noble indicated that Plaintiff had adaption limitations. Specifically, he opined that Plaintiff was "moderately limited" in his ability to: respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (T. 107.) He opined that Plaintiff was "not significantly limited" in his ability to: be aware of normal

hazards and take appropriate precautions; and set realistic goal or make plans independently of others. (*Id.*) Dr. Noble stated that these limitations were based on his reading of Dr. Caldwell's opinion that Plaintiff's insight and judgment was fair to poor; Plaintiff's self-reports of limitations with driving; and Plaintiff's difficulty dealing appropriately with stress. (*Id.*)

In making her mental RFC determination the ALJ afforded "great weight" to the opinion of Dr. Noble. (T. 32.) The ALJ afforded "some weight" to a portion of Dr. Caldwell's opinion and no weight to her opinion that Plaintiff was unable to make appropriate decision, relate adequately with others, and appropriately deal with stress. (T. 33.) In affording weight to Dr. Noble's opinion, the ALJ reasoned that he, unlike Dr. Caldwell, reviewed the evidence in the record. (*Id.*)

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing

*Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Although the Second Circuit has made it clear that the opinions of State agency medical consultants may constitute substantial evidence to support an ALJ's RFC determination, the opinion of such examiner must still be supported by substantial evidence in the record. *See Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record."). In *Heagney-O'Hara*, the Second Circuit concluded that the ALJ's RFC determination was supported by the opinion of the consultative examiner because the opinion was consistent with the objective medical record. *Heagney-O'Hara,* 646 F. App'x at 126. In *Monette*, the Court stated that the ALJ properly relied on the opinion of a consultative examiner because the opinion was "consistent with the record at large and the applicable regulations." *Monette,* 2016 WL 3639510, at *2. In *Snyder,* the Court held that "the consulting psychologist opinion was consistent with other medical evidence and was supported by substantial evidence" and therefore constituted substantial evidence to support the ALJ's RFC determination. *Snyder,* 2016 WL 3570107, at *1. Here, the ALJ's analysis of Dr. Noble's opinion falls flat.

The Regulations state:

When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through

(d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

When evaluating medical opinion evidence in the record, the relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ's only reason for affording Dr. Noble's opinion "great weight" was that he reviewed the record. (T. 32-33.) Although the Court requires "no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear," such a terse analysis of an opinion, especially one upon which the ALJ primarily based her RFC determination, prevents meaningful review. *See Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004).

In addition, there were conflicts in the record which the ALJ failed to resolve. The ALJ's failure to resolve these conflicts further prevents meaningful review. For example, Dr. Noble stated that Plaintiff was capable of simple and complex work; however, this conclusion conflicts with Dr. Caldwell's opinion that Plaintiff was "limited in his ability to follow and understand simple directions and instructions." (T. 107, 477.) Although the ALJ's RFC determination ultimately limited Plaintiff to simple unskilled work, the conflict

between Dr. Noble's statement that Plaintiff could perform simple work and Dr. Caldwell's statement that Plaintiff would have limitations in his ability to perform simple work was not resolved.

Dr. Caldwell opined that Plaintiff was "unable" to make appropriate decisions, relate adequately with others, or appropriately deal with stress. (T. 477.) The ALJ dismissed Dr. Caldwell's limitations, reasoning that it was "clear" they were based on Plaintiff's subjective complaints. (T. 33.) To be sure, an ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably determined to be less than fully credible. *Roma v. Astrue*, 468 F.App'x 16, 19 (2d Cir. 2012). However, in her objective mental status examination Dr. Caldwell observed that although Plaintiff was cooperative, his manner of relating, social skills, and overall presentation was "poor due to anxiety." (T. 475.) Her objective examination also concluded that Plaintiff's insight was "fair to poor" and his judgment was "poor." (T. 476.) The ALJ appears to have misread Dr. Caldwell's opinion because her examination contained objective findings which could reasonably support the limitations in her medical source statement.

Dr. Noble's opinion appears to misread Dr. Caldwell's opinion as well. Dr. Caldwell opined that Plaintiff was "unable" to appropriately deal with stress. (T. 477.) However, in his RFC analysis, Dr. Noble opined that Plaintiff had moderate limitations in his ability to respond appropriately with changes in the work setting based on Dr. Caldwell's observation that Plaintiff had "difficulty" dealing appropriately with stress. (T. 107.) Therefore, the ALJ and Dr. Noble appeared to have misread Dr. Caldwell's

13

opinion and remand is recommended for a proper evaluation of the medical opinions of the record.

An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") However, the ALJ's RFC determination does not appear to be consistent with the record as a whole. Dr. Noble's opinion, upon which the ALJ relied, was inconsistent with the medical source opinion of Dr. Caldwell and such inconsistencies were not adequately resolved.

Plaintiff also argues that the ALJ erred in her analysis of the opinion of Plaintiff's treating source, Joseph Augustine, M.D. (Dkt. No. 13 at 7-12 [Pl.'s Mem. of Law].) In her assessment of Dr. Augustine's opinion, the ALJ concluded that his opinions were entitled to only "minimal weight," in part, because they were inconsistent with Dr. Noble's opinion. (T. 33-34.) Therefore, because remand is recommended for a proper analysis of Dr. Noble's opinion, remand is also recommended for an evaluation of Dr. Augustine's opinions in light of such new analysis.

In sum, the opinions of examining and non-examining State agency consultants may constitute substantial evidence if their opinions are supported by the record; however, the ALJ's conclusory analysis of Dr. Noble's opinion was not made in accordance with the Regulations and the ALJ failed to resolved inconsistencies in the record, thus preventing meaningful review. Further, any attempt by the ALJ to resolve inconsistencies was based on a misreading of the consultative examiner's opinion.

Therefore, remand is recommended for a proper analysis of the medical opinion evidence in the record.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        October 5, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge